UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | No.   21-cr-218 (APM) |
| **MATTHEW CLARK** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Matthew Clark, by his attorney, Maria N. Jacob, hereby submits the following memorandum in aid of sentencing in this matter.

Mr. Clark is a 47 year-old husband who has lived a simple life providing for his family up until the instant offense. He is among the least culpable group of defendants who walked into the Capitol building, had no confrontation with law enforcement, entered the building at 3:06 p.m. and left at 3:12 p.m. immediately after observing signs of violence. Mr. Clark has sincerely accepted responsibility for his conduct. Based on all of the factors discussed below, Mr. Clark respectfully requests that the Court impose a period of probation of 12 months.

## BACKGROUND

Mr. Clark entered a guilty plea to one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 USC §5104(e)(2)(G), for his participation in the events on January 6, 2021. On that day, he attended the "Save

1

America" rally where he listened to several speeches encouraging the crowd to march to the Capitol to "stand up for this country and stand up for what is right.[1]" After the rally, Mr. Clark, along with thousands of other individuals attending the rally, walked over to the Capitol building and entered inside. Mr. Clark did not encourage any violence, destruction or theft of property, and did not have any negative confrontations with law enforcement while entering or exiting the building. Mr. Clark will appear for sentencing on October 28, 2022. He has reviewed the Pre-Sentence Investigation Report and does not have any objections to its contents.

## ARGUMENT

**I.   Legal Standard**

The Court is well aware that the Supreme Court's opinions in *Kimbrough v. United* States, 552 U.S. 84 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), have dramatically altered the law of federal sentencing. Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a). Those factors include (a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the

---

[1] *See* Matthew Choi, *Trump is on trial for inciting an insurrection. What about the 12 people who spoke before him?*, Politico (Feb. 10, 2021), available at https://www.politico.com/news/2021/02/10/trump-impeachement-stop-the-steal-speakers-467554.

2

offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational and vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a).

**II.     Imposing a Sentence of Twelve Months' Probation is Sufficient, But Not Greater Than Necessary, to Comply with 18.U.S.C. §3553(a).**

   **a.  Mr. Clarks' Personal History and Characteristics**

Mr. Clark was born in Lewistown, Pennsylvania where he has lived for all of his life. He is one of three siblings who all live nearby and who maintain a close relationship with him. Mr. Clark grew up in a typical middle class family with parents who are now retired and remain married. Unfortunately, Mr. Clark's father is currently suffering from Multiple Sclerosis and early signs of dementia.

Mr. Clark grew up in a small town and graduated from high school in his home town in 1993. He has been working to support his family ever since and has had various jobs over the years, mostly working in maintenance just like his father did. Mr. Clark has done maintenance for a couple of the ski resorts in the area, working for Camelback Mountain Report in 2015 and before that working for Tussey Mountain Ski Resort from 2008-2015. Mr. Clark worked a couple years has a mechanic but returned to maintenance and worked for the Waterside Campground from 2017-2021. Unfortunately, due to the instant offense, he was recently terminated from this position.

Mr. Clark has been married to his wife, Christy Clark, since 2007. Although they do not have any children in common, she has three children from a prior relationship whom he considers his own, especially since her youngest daughter was only 6 months old when they began their relationship.

On January 6, 2021, Mr. Clark traveled to Washington, D.C. to attend the rally with his wife and friend. He had no prior intent to enter the Capitol building and was not affiliated with any extremist groups.

Since January 6, 2021, Mr. Clark has returned to his simple life in Lewistown. Although he lost his job, he began working for a small business helping a friend who builds dog ability equipment for dog shows. Mr. Clark has also recently sold his home where he lived for 10 years with his wife in order to pay several outstanding bills. He currently lives in a recreational vehicle with his wife.

### b. Nature and Circumstances of the Offense

Mr. Clark accepted responsibility for the offense as soon as law enforcement interviewed him on February 10, 2022. In doing so, Mr. Clark agreed to speak to the FBI without a lawyer present and voluntarily incriminated himself. He explained to the FBI that they attended the rally and heard the former President Donald Trump speak..[2] The former President told his supporters that they would go down to the

---

[2] For an hour, President Trump encouraged his supporters to "fight" for him. He said, "We will not let them silence your voices…*we're* going to walk down to the Capitol, and *we're* going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them…[if the election is certified], you will have an illegitimate president. That's what you'll have. And *we* can't let that happen…And *we* fight. *We* fight like hell. And if you don't fight like hell, you're not going to have a country anymore." *See* Brian Naylor, *Read Trump's Jan. 6 Speech, A Key Part Of Impeachment Trial*, NPR (Feb. 10, 2021), available at https://www.npr.org/2021/02/10/966396848/read-trumps-jan-6-speech-a-key-part-of-impeachment-trial.

Capitol *together* as he said, "we're going to walk down to the Capitol."[3] After the rally, Mr. Clark and his wife and friend he was there with noticed there were people going to the Capitol building. Mr. Clark further explained they wanted to see what was going on so they went and walked to the Capitol. He also explained that they were not met with resistance when they went up the steps of the Capitol building and did not see any violence before entering the building except for seeing a man standing on the opposite end of the building with what looked like a pitchfork which he admitted was odd. Mr. Clark then explained that once they entered the building, along with a big crowd who was pushing forward, he noticed officers trying to push people out. Mr. Clark explained he told his wife they needed to get out of there. Mr. Clark was honest with the FBI and told him details about a police officer that got into a confrontation with a younger man. He also noticed that there was an individual who pulled out a knife and at that moment – they tried finding their way out of the building. As soon as they left the building, Mr. Clark's main goal was to leave the city as soon as possible.

During the interview with law enforcement, Mr. Clark assisted agents to obtain entry to his home so that they could conduct a search pursuant to the search warrant. He did not even hesitate.

While inside the building for less than 10 minutes, Mr. Clark did not have any confrontation with law enforcement, did not enter any sensitive areas, did not destroy or take anything, and had no idea what had transpired just an hour before

---

[3] Id.

he arrived. In fact, he did not make it past the Rotunda before he realized that they needed to leave and it was not permissible to be there.

This conduct was so completely out of Mr. Clarks' good character that he has exhibited his entire life. His friend provided a letter to the court where he describes how Mr. Clark has helped him over the years and further describes Mr. Clark as "reliable and generous person." *See* Exhibit 1, Letter from David Camisa.

Ever since January 6, 2021, Mr. Clark has completely distanced himself from the events and his main goal has been to get back to work and continue supporting his family. He cooperated with law enforcement and has been compliant with his pre-trial supervision that he has been on for the past year and a half.

Unfortunately, Mr. Clark lost a really good job that he had for four years because his employer learned of his charges. He has also been in the local news every time he has had a court proceeding, which has not only been humiliating but has caused others in the community to view him differently.

   c. **The Need to Promote Respect for the Law, Provide Just Punishment, Protect the Community and Provide Adequate Deterrence, and the Need to Avoid Unwanted Sentencing Disparities**

The request for twelve months' probation acknowledges the need to promote respect for the law and provide just punishment.  United States Probation recommends 36 months of probation, however three years of supervision is not necessary for an individual such as Mr. Clark who has accepted full responsibility,

6

and has already been supervised successfully for the past 20 months.[4] He has also been adequately deterred from any future conduct as he has been in the spotlight in his community, arrested for a criminal charge, and has lost a well-paying job that he loved as a result of his conduct.

Furthermore, a sentence of 12 months' probation is in line with similar past sentences imposed. For example, in *United States v. Danielle Doyle*, 1:21-CR-324 (TNM), the court imposed a sentence of 2 months' probation. The defendant in that case walked through the building for about 20-25 minutes with no incident and left. This case is also similar to *United States v. Eliel Rosa*, 1:21-CR-068 (TNM) where the court imposed a sentence of 12 months' probation. In that case, the defendant accepted responsibility early on, did not pre-plan or coordinate his activities, did not go far into the Capitol building, and left when asked to do so by law enforcement.[5]

This case can be distinguished from those who received lengthier periods of probation. For example, the Court in *United States v. Cavanaugh*, 21-cr-362 (APM) imposed a period of 24 months' probation. In that case, the defendant remained in

---

[4] Probation suggests this supervision is appropriate given his past criminal history. However, his last misdemeanor conviction occurred in 2003, almost 20 years ago. This minor and ancient criminal history is not representative of the past 20 years and the past 20 months where he has complied with supervision.

[5] *See also US v. Julia Sizer*, 21-cr-621 (CRC) (sentenced to 12 months' probation after going inside the building with her husband. Ms. Sizer is also a mother of three children who is active in her community and has no criminal history); *US v. Jeffrey Witcher, 21-cr-235* (RC) (sentenced to 12 months' probation after government alleged he remained in the building for 15-20 minutes and accused him of shouting at law enforcement while inside. Mr. Witcher also turned himself in and was cooperative with law enforcement); *US v. Robert Snow*, 22-cr-030 (TJK) (defendant sentenced to 12 months' probation after government accused him of entering and remaining in capitol building for 43 minutes after seeing police officers pepper spray other rioters. He was also cooperative with law enforcement and is a 78 year old man in poor health).

the building for longer than Mr. Clark, approximately 33 minutes, and observed signs of chaos before he entered into the Capitol building. Lastly, in *U.S. v. Jordan Stotts*, 21-CR-272 (TJK), the court imposed 24 months' probation for a defendant who allegedly shouted at MPD officers and the government believed he posted troubling comments following January 6, 2021.

In light of the 3553(a) factors, the likelihood of recidivism for an individual like Mr. Clark is virtually non-existent. General deterrence has also been served as the whole world has already seen, through easily accessible social media applications and consistent news coverage, the collateral consequences that have damaged the lives and reputations of misdemeanants with the same charge.

## CONCLUSION

For the reasons stated above, Mr. Clark respectfully requests that the Court impose 12 months' probation and also requests that a fine not be imposed in light of his obligation to pay $500 restitution.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Maria N. Jacob
Assistant Federal Public Defender
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500
Maria_jacob@fd.org